WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholas Casavelli, et al., | No. CV-20-00497-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Donna J Johanson, et al., | |
| Defendants. | |

Pending before the Court are three motions to dismiss (Docs. 87, 90, 101), responses to each motion (Docs. 96, 97, 104), and replies for each motion (Docs. 98, 99, 109). Additionally pending before the Court is a motion to enjoin (Doc. 84), a motion for entry of judgment under Rule 54(b) (Doc. 103), a motion to seal (Doc. 111) and a motion to strike (Doc. 112). The Court now rules on the motions.[1]

## I.    BACKGROUND

In short, Plaintiffs claim that Defendants have conspired against them in a pending state court action in Maricopa County Superior Court. (Doc. 82). Defendants include the parties to that state court action, counsel, Maricopa County Superior Court judges, and a bank. (*Id.* at 2–3). Plaintiffs' Third Amended Complaint (Doc. 82) asserts thirty causes of action, includes 48 numbered paragraphs of allegations that span ninety-seven pages, and

---

[1] The Court finds that a hearing is unnecessary for any of the pending motions (Docs. 87, 90, 101) as the issues have been fully briefed and oral argument would not have aided the Court's decisional process. *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Inv'rs Grp. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2019 WL 1099882, at *1 n.1 (D. Ariz. Mar. 8, 2019).

1   cites violations arising from varying sources of law, including the United States
2   Constitution, the United States Code, and Arizona law. (Doc. 82).

3   **II.    LEGAL STANDARD**

4       Federal Rule of Civil Procedure 8(a) requires that a complaint include, among other
5   things, "a short and plain statement of the claim showing that the pleader is entitled to
6   relief." Fed. R. Civ. P. 8(a)(2). This statement "need not contain detailed factual
7   allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on
8   its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)
9   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a) "demands more
10  than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*,
11  556 U.S. 662, 678 (2009). Although a court must accept all factual allegations at the
12  pleading stage, courts may not accept legal conclusions couched as factual allegations. *Id.*
13  at 678–79. As such, "threadbare recitals of the elements of a cause of action, supported by
14  mere conclusory statements" are not sufficient to state a claim. *Id.* Indeed, the short and
15  plain statement required by Rule 8(a) must "give the defendant fair notice of what the . . .
16  claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in
17  original) (citation omitted).

18      Further, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P.
19  8(d)(1); see also Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in
20  numbered paragraphs, each limited as far as practicable to a single set of circumstances.").
21  "Where a complaint contains the factual elements of a cause, but those elements are
22  scattered throughout the complaint without any meaningful organization, the complaint
23  does not set forth a 'short and plain statement of the claim' for purposes of Rule 8."
24  *Chagolla v. Vullo*, No. CV-17-01811-PHX-SPL, 2018 WL 10602297, at *2 (D. Ariz. Mar.
25  30, 2018) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988)).

26      A complaint may be dismissed where it "fail[s] to state a claim upon which relief
27  can be granted." *See* Fed. R. Civ. P. 12(b)(6). All facts are read in the light most favorable
28  to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Moreover,

a pro se litigant's pleadings must be liberally construed. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). But the liberal construction owed to pro se pleadings is not a form of immunity from the Federal Rules of Civil Procedure, including federal pleading requirements. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

When the complaint does not state a claim upon which relief can be granted, the next inquiry is whether amendment can cure the defect. *See Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc); *see also* Fed. R. Civ. P. 15(a)(2) (providing that courts should "freely give leave [to amend] when justice so requires"). Rule 15(a)(2) establishes a "policy favoring liberal amendment." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Nonetheless, leave to amend should be denied if amendment would be futile. *See Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014).

## III.   ANALYSIS

The Third Amended Complaint includes thirty causes of action. (Doc. 82). Defendants seek dismissal of all of them. (Docs. 87, 90, 101). As will be discussed, Plaintiffs' Third Amended Complaint fails to meet federal pleading standards as it constitutes an impermissible "shotgun pleading." In addition to the global issues, the individual causes of action in the Third Amended Complaint fail to meet federal pleading standards. The Court will examine those causes of action in turn before discussing the global issues with the Third Amended Complaint.

### a.   First–Seventh Causes of Action: Forgery

Plaintiffs assert causes of action against Defendants Brian Eastin, Provident Law PLLC, Donna Johanson, the Estate of Gary T. Johanson, Garpdon LLC, and the Johanson Family Revocable Trust for forgery under 42 U.S.C. § 1983. (Doc. 82 at 32–45). To prevail on a claim under 42 U.S.C. § 1983, Plaintiffs must allege a violation of a federal constitutional or statutory right by a state actor. *See Paul v. Davis*, 424 U.S. 693, 700–01 (1976); *Ketchum v. County of Alameda*, 811 F.2d 1243, 1245 (9th Cir. 1987). Plaintiffs fall short on both requirements.

### 1.      Violation of a Federal Constitutional or Statutory Right

Plaintiffs assert that their First Amendment rights "to redress grievances and freedom of speech," Fourth Amendment rights "to be secure in their persons, houses, papers, and effects," and Fourteenth Amendment rights "to due process and equal protection under the law" were violated by Defendants' alleged acts of forgery. (*See* Doc. 82 at 32–45) None of these alleged violations, however, satisfy Rule 8(a)'s pleading requirements.

### A.      First Amendment

Plaintiffs aver that they have been denied their First Amendment right to a forum to redress their grievances. (*See* Doc. 82 at 32–45). As this Court noted previously though, "based on the facts alleged in the Complaint, Plaintiffs successfully exercised their right to petition—once in Arizona Superior Court for Maricopa County and, again, before this Court." (Doc. 13 at 5). Plaintiffs' Third Amended Complaint contains multiple references to their use of the courts. (*See, e.g.*, Doc. 82 at 18 (noting that on February 14, 2020, Plaintiffs filed a motion in state court that was subsequently fully briefed and ruled on)). While Plaintiffs may not like the outcomes of their cases, the Constitution provides no guarantee of a *successful* petition for redress of grievances. *See Petersen v. Cazemier*, 164 F.Supp.2d 1217, 1225 (D. Or. 2001).

Plaintiffs also argue that their First Amendment rights to free speech were violated. (*See* Doc. 82 at 32–45). Yet, Plaintiffs do not point to any specific actions undertaken by the Defendants at issue that work to deny Plaintiffs' rights to free speech. Plaintiffs instead argue that their rights to free speech were limited when Judge Duncan refused to let Mr. Casavelli speak during a state court proceeding for "no sound reason." (Doc. 82 at 23–24). Yet, Plaintiffs' own response shows that Judge Duncan only refused to allow Mr. Casavelli to speak after he was argumentative and repeatedly interrupted her. (*See* Doc. 96 at 25–41); (*see also* Doc. 87-2 at 4). A court may limit certain of a party's rights to ensure that an orderly proceeding can be conducted. *See Escarcega v Frauenheim*, No. CV 14-1749-PA (PLA), 2016 WL 9108856, at *25 (C.D. Cal. Sept. 30, 2016), *report and*

- 4 -

*recommendation adopted*, No. CV 14-1749-PA (PLA), 2017 WL 2468772 (C.D. Cal. June 6, 2017) (limiting a party's right to represent himself, in part, because he repeatedly interrupted the court); *Pantchev v. Martel*, No. 2:17-CV-02807-CJC-JC, 2020 WL 4005651, at *20 (C.D. Cal. June 22, 2020), *report and recommendation adopted*, No. 2:17-CV-02807-CJC-JC, 2020 WL 4003021 (C.D. Cal. July 15, 2020) (holding that it was appropriate to remove a criminal defendant from closing arguments due to his repeated interruptions of the court). Thus, the Court finds that Plaintiffs do not state a valid claim that their First Amendment rights were violated by any of the Defendants.

### B.    Fourth Amendment

Plaintiffs additionally argue that their Fourth Amendment rights "to be secure in their persons, houses, papers, and effects" were violated. (*See* Doc. 82 at 32–45). While it is not clear from the Third Amended Complaint, Plaintiffs seem to argue that the property at issue was their bank records, their litigation costs, and the costs of judgments against them (*See id.* at 15). To state a claim under the Fourth Amendment regarding their bank records, however, Plaintiffs must show that the Defendants at issue violated Plaintiffs' "reasonable expectation of privacy." *Price v. Turner*, 260 F.3d 1144, 1148 (9th Cir. 2001) (citations omitted); see *In re Grand Jury Proceedings*, 40 F.3d 959, 962 (9th Cir. 1994) (per curiam). "In general, an American depositor has no reasonable expectation of privacy in copies of his or her bank records, such as checks, deposit slips, and financial statements maintained by the bank." *In re Grand Jury Proceedings*, 40 F.3d at 962 (citing *United States v. Miller*, 425 U.S. 435, 442 (1976)). Acquisition of Plaintiffs' bank records did not violate the Fourth Amendment as Plaintiffs have not sufficiently alleged that there was any violation of their reasonable expectation of privacy. In fact, a "depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person" to others. *See id.* (quoting *Miller*, 425 U.S. at 443).

Regarding Plaintiffs' claims that their Fourth Amendment rights were violated by their need to pay litigation costs and the costs of judgments against them, Plaintiffs cite no legal authority for this proposition. The Fourth Amendment protects only against

1    "unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiffs' claims that their

2    costs and adverse judgments were an unreasonable seizure are conclusory and do not

3    satisfy the Rule 8(a) requirements. *See Iqbal*, 556 U.S. at 678–79; (*see, e.g.*, Doc. 96 at 11

4    (claiming that fees awarded to Defendants because of Plaintiffs' contemptuous conduct

5    were unreasonable simply because Plaintiffs believe their conduct was not contemptuous)).

6    Thus, the Court finds that Plaintiffs do not state a valid claim that their Fourth Amendment

7    rights were violated by any of the Defendants.

8                              **C.      Fourteenth Amendment**

9            Plaintiffs next argue that their Fourteenth Amendment rights "to due process and

10   equal protection under the law" were violated. (*See* Doc. 82 at 32–45). It is unclear from

11   the Third Amended Complaint how the Defendants at issue allegedly violated Plaintiffs'

12   Fourteenth Amendment rights, but Plaintiffs seem to argue that unfavorable outcomes in

13   the state court proceeding are the cause of these violations. Plaintiffs have not been denied

14   due process as they state throughout their complaint that they have been engaged in the

15   state court litigation. (*See, e.g.*, Doc. 82 at 18 (noting that on February 14, 2020, Plaintiffs

16   filed a motion in state court that was subsequently fully briefed and ruled on)). Plaintiffs'

17   claims that the sanctions against them are a denial of due process fail as the Constitution

18   provides no guarantee to success in court. *See Petersen*, 164 F.Supp.2d at 1225 (D. Or.

19   2001).

20           Further, Plaintiffs' claim that their rights to equal protection have been violated

21   because they have been unsuccessful in the state court action due to their "class base of

22   Italian American." (Doc. 82 at 19). Plaintiffs offer no facts or reasoning to support such a

23   claim, and simply argue that "the only plausible explanation [for their lack of success in

24   the state court action] is plaintiffs are of a class base Italian American." (*Id.* at 81). Such

25   claims are conclusory and do not satisfy the Rule 8(a) requirements. *See Iqbal*, 556 U.S. at

26   678–79. Thus, the Court finds that Plaintiffs do not state a valid claim that their Fourteenth

27   Amendment rights were violated by any of the Defendants.

28           Because Plaintiffs do not validly assert that any of their federal Constitutional or

statutory rights were violated, Plaintiffs' Third Amended Complaint does not establish an actionable § 1983 claim.

### 2.    State Actor

Plaintiffs argue that Defendants were state actors when committing the alleged acts of forgery. (*See* Doc. 82 at 32–45) When a court determines whether a party is a state actor, the court asks: "'is the alleged infringement of federal rights fairly attributable to the [government]?'" *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). There are four different tests used by the Ninth Circuit to identify state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Sutton*, 192 F.3d at 835–36).

"Under the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" *Lee v. Katz*, 276 F.3d 550, 554–55 (9th Cir. 2002) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)). "To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental." *Id.* Under the joint action test, a court considers whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995) (internal citations, brackets and quotation marks omitted). "The compulsion test considers whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Kirtley*, 326 F.3d at 1094. The nexus test considers whether "there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Id.* (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

"While these factors are helpful in determining the significance of state involvement, there is no specific formula for defining state action." *Howerton v. Gabica*,

708 F.2d 380, 383 (9th Cir. 1983) (citation and internal quotation marks omitted); *see also Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961) ("[T]o fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an impossible task which [t]his Court has never attempted.") (citation and internal quotation marks omitted). "Instead, '[c]ontemporary decisions stress the necessity of a close nexus between the state and the challenged conduct rather than application of a mechanistic formula.'" *Sutton*, 192 F.3d at 836. "'Under any formula, however, the inquiry into whether private conduct is fairly attributable to the state must be determined based on the circumstances of each case.'" *Id.* (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999).

Plaintiffs make clear that their forgery causes of action apply only to Defendants Brian Eastin, Provident Law PLLC, Donna Johanson, the Estate of Gary T. Johanson, Garpdon LLC, and the Johanson Family Revocable Trust. (*See* Doc. 82 at 32–45). None of these Defendants are state actors under any of the tests endorsed by the Ninth Circuit. Plaintiffs assert that the Defendants at issue are state actors by virtue of their serving of subpoenas through a state court proceeding. (*See id.* at 29–31). Merely going through a state court to serve a subpoena, however, is not enough to transform a party into a state actor. *See Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983) (holding that a party does not become a state actor merely by employing state authorized subpoena power); *Broadley v. Hardman*, 301 F. App'x 4, 5 (1st Cir. 2008) (holding that a party's use of a subpoena "did not transform him into a state actor"); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 278 (3d Cir. 1999) (holding that a party does not become a state actor simply by employing the state's subpoena laws). While there are potential legal consequences for failure to obey a subpoena, which might ultimately involve state officials, the mere serving of a subpoena does not involve an exclusive function of, joint action with, compulsion by, or a clear nexus with the government. *See Angelico*, 184 F.3d 268, 278 (3d Cir. 1999) (noting that, while there may be legal consequences for failure to obey a subpoena, there is no state action in simply resorting to the state procedure for subpoena unless state

officials are actually used to enforce or carry out that procedure).

Further, Plaintiffs argue that the possession of a state license to practice law by certain Defendants makes them state actors. (*See* Doc. 82 at 32–45). Holding a state license to practice law as an attorney in private practice, however, does not transform a party into a state actor. *See Simmons v. Sacramento Cty. Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (holding that a state-licensed lawyer in private practice was not a state actor); *Briley v. State of Cal.*, 564 F.2d 849, 855 (9th Cir. 1977) ("We have repeatedly held that a privately-retained attorney does not act under color of state law [for the purposes of § 1983]."); *Tanasescu v. State Bar of Cal.*, No. SACV 11-00700-CJC, 2012 WL 1401294 (C.D. Cal. Mar. 26, 2012), *report and recommendation adopted*, No. SACV 11-00700-CJC, 2012 WL 1401254 (C.D. Cal. Apr. 19, 2012), *aff'd*, 569 F. App'x 502 (9th Cir. 2014) ("[I]t is well-established that lawyers in private practice generally do not act under color of state law when they represent parties in court proceedings."). Mere possession of a state license does not meet any of the four factors approved by the Ninth Circuit. If it did, then anyone holding a state-issued driver's license would be a state actor when behind the wheel.

Plaintiffs also argue that the Defendants at issue are state actors because of their alleged bribery of Maricopa County Superior Court judges. (*See* Doc. 82 at 32–45). Private parties can be considered to act under color of state law if the official act of a judge was the product of a corrupt conspiracy involving the private parties' bribery of that judge. *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Plaintiffs claim that Defendant Donna J. Johanson withdrew money and bribed Judge Flores and Judge Duncan with it. (*See* Doc. 82 at 26–27). While Plaintiffs allege facts to support the claim that Defendant Donna J. Johanson withdrew money from her bank account, Plaintiffs allege no facts to support their claim that the money was paid to Judge Flores and Judge Duncan. (*See id.*). Plaintiffs simply argue "[u]pon information and belief" that the alleged bribery occurred. (*Id.*). Such allegations are conclusory and do not satisfy the Rule 8(a) requirements. *See Iqbal*, 556 U.S. at 678–79.

Additionally, Plaintiffs claim the conspiratorial communications between Defendants and the state court judges were made in open court at a rule 16 conference in a state court proceeding. (*See* Doc. 82 at 81). Plaintiffs allege that these communications were conspiratorial because they did not favor Plaintiffs and were made after Plaintiffs voluntarily left the proceeding. (*Id.* at 25–26). "[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co–conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 28. Further, an *ex parte* judicial proceeding cannot constitute a conspiracy unless it works to deprive a party of their rights or accomplish an unlawful purpose. *See* 42 U.S.C. § 1985; *Ares Funding, LLC v. MA Maricopa, LLC*, No. 06-1102-PHX-ROS, 2006 WL 8440402, at *3 (D. Ariz. Sept. 29, 2006). The communications in question did not deprive Plaintiffs of any rights or pursue an unlawful purpose as Plaintiffs voluntarily left the hearing and the state court only discussed procedural matters in their absence. *See Roberts v. MacDonald*, 967 F.2d 590 (9th Cir. 1992) (noting that an *ex parte* hearing only violates a party's rights if the party was denied the "opportunity to participate in determination of the relevant issues," and that an *ex parte* hearing does not violate a party's rights if that party was not prejudiced); (*see also* Docs. 96 at 25–41, 87-2 at 4). Thus, Plaintiffs' Third Amended Complaint does not establish that the Defendants at issue were state actors as required for a § 1983 claim.

### 3.    Conclusion Regarding Forgery Claims

Plaintiffs' causes of action against Defendants for forgery under 42 U.S.C. § 1983 are inadequate because they did not validly allege a violation of a federal constitutional or statutory right or conduct by a state actor. As this is the Third Amended Complaint and Plaintiffs have repeatedly failed to allege any valid forgery claims under § 1983, the Court finds that further leave to amend would be a futile exercise and dismisses these claims with prejudice. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (holding that leave to amend need not be granted if it would be "a futile exercise"); *Airs Aromatics*, 744 F.3d at 600 (holding that leave to amend should be denied if amendment would be futile).

### b.    Eighth–Twenty-Fourth Causes of Action: Fraud

Plaintiffs assert causes of action against Defendants Brian Eastin, Provident Law PLLC, Donna Johanson, the Estate of Gary T. Johanson, Garpdon LLC, and the Johanson Family Revocable Trust for fraud under 42 U.S.C. § 1983. (Doc. 82 at 45–79). To prevail on a claim under 42 U.S.C. § 1983, Plaintiffs must allege a violation of a federal constitutional or statutory right by a state actor. *See Paul*, 424 U.S. at 700–01; *Ketchum*, 811 F.2d at 1245. Plaintiffs, again, fall short on both requirements.

The fraud causes of action are similar to the forgery causes of action. Each cause of action contains similar conclusory statements to the forgery causes of action alleging the violation of constitutional rights, but do not set forth facts that satisfy the Rule 8(a) pleading standards. (*See* Doc. 82 at 45–79); *see also supra* Section III.a.1. Further, as discussed *supra*, none of the Defendants to whom these claims apply are state actors. *See supra* Section III.a.2. Thus, because they did not validly allege a violation of a federal constitutional or statutory right or conduct by a state actor, Plaintiffs do not adequately plead their causes of action against Defendants for fraud under 42 U.S.C. § 1983.[2]

As this is the Third Amended Complaint and Plaintiffs have repeatedly failed to allege any valid fraud claims under § 1983, the Court finds that further leave to amend would be a futile exercise and dismisses these claims with prejudice. *See Gompper*, 298 F.3d at 898 (holding that leave to amend need not be granted if it would be "a futile exercise"); *Airs Aromatics*, 744 F.3d at 600 (holding that leave to amend should be denied if amendment would be futile).

### c.    Twenty-Fifth–Twenty-Eighth Causes of Action: Conspiracy

Plaintiffs assert causes of action against numerous Defendants for conspiracy. (*See* Doc. 82 at 79–86). The Court will address the separate causes of action below.

### 1.    Causes of Action Against Defendants Lisa Flores and Sally

---

[2] To the extent that Plaintiffs claim their damages stem from erroneous rulings against them in their state court proceeding, this court is not the proper forum to address such concerns. *See Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003) ("[W]hen a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal.); *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029–30 (9th Cir. 2001).

**Schneider Duncan**

Plaintiffs assert causes of action against Defendants Lisa Flores and Sally Schneider Duncan for conspiracy under 42 U.S.C. § 1983 and § 1985(2). (Doc. 82 at 79–80, 84–86). To prevail on a claim under 42 U.S.C. § 1983, Plaintiffs must allege a violation of a federal constitutional or statutory right by a state actor. *See Paul*, 424 U.S. at 700–01; *Ketchum*, 811 F.2d at 1245. 42 U.S.C. § 1985(2) provides a cause of action under two scenarios: The first scenario is where a conspiracy "deter[s,] by force, intimidation, or threat[,] a party or witness in federal court." *See Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 763 (9th Cir. 1991) (citation omitted). The other scenario prohibited by 42 U.S.C. § 1985(2) occurs where a conspiracy, motivated by class-based animus, "obstruct[s] the due course of justice in any State or Territory with intent to deny equal protection." *See Bagley*, 923 F.2d at 763.

Plaintiffs' claims against these Defendants revolve around Defendants' actions as Maricopa County Superior Court judges. In the twenty-fifth cause of action, Plaintiffs allege that Judge Flores conspired with Defendant Brian Eastin at a March 11, 2020, rule 16 hearing which resulted in her May 12, 2020, order to extend the dispositive motion deadlines in Plaintiffs' state court case. (*See* Doc. 82 at 79). In the twenty-eighth cause of action, Plaintiffs allege that Judge Duncan conspired with Defendant Brian Eastin by signing an order awarding attorney's fees and granting a motion to strike in Plaintiffs' state court case. (*See id.* at 84–85).

"Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). An act by a judge is a "judicial" act when "it is a function normally performed by a judge," and when the parties at issue have "dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Judges have immunity for their judicial acts "even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* at 356. A judge "will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57. Judicial immunity applies even if a judge's actions are *ex parte*, so long as the

actions are not taken in the clear absence of jurisdiction. *Id.* at 363 n.12. Notably, judicial immunity applies even to alleged acts of conspiracy or bribery. *Ashelman*, 793 F.2d at 1078.

The actions of Judge Flores and Judge Duncan at issue are certainly judicial acts entitled to immunity. Conducting hearings, ruling on motions, and awarding attorney's fees are acts routinely undertaken by judges. To sidestep this reality, Plaintiffs cite the following passage in *Ashelman*: "Relying on Ninth Circuit authority, we held that a judge and prosecutor are not protected by immunity when they conspire to deprive a defendant of constitutional rights." *Ashelman*, 793 F.2d at 1074 (citing *Beard v. Udall*, 648 F.2d 1264 (9th Cir. 1981) *overruled by Ashelman*, 793 F.2d 1072). This portion of *Ashelman*, however, refers to a decision that was subsequently withdrawn. *Id.* at 1075. The *Ashelman* court found that the prior reasoning construed judicial immunity too narrowly, and that judicial immunity applied to claims of conspiracy. *Id.* at 1078.

Next, Plaintiffs argue that Judge Flores and Judge Duncan are not entitled to judicial immunity because their actions were taken *ex parte* and as a result of bribery. (*See* Doc. 82 at 26–27). Yet, judicial immunity applies to *ex parte* actions, *Stamp*, 435 U.S. at 363 n.12, and actions allegedly motivated by bribery, *Ashelman*, 793 F.2d at 1078.[3] Thus, so long as Judge Flores and Judge Duncan had jurisdiction when acting, they are covered by judicial immunity.

Plaintiffs' complaint vaguely argues that Judge Flores and Judge Duncan acted in absence of jurisdiction when furthering the alleged conspiracy because they had been divested of jurisdiction by notices of appeal and removal. (*See* Doc. 82 at 22–24, 25–26). Even if Plaintiffs are right that the notices of appeal and removal divested Judge Flores and

---

[3] Even if judicial immunity did not apply to the bribery claims against Judge Flores and Judge Duncan, Plaintiffs' claims of bribery are conclusory. Plaintiffs argue that Defendant Donna J. Johanson withdrew money and paid it to Judge Flores and Judge Duncan as bribes. (*See* Doc. 82 at 26–27). While Plaintiffs allege facts to support the claim that Defendant Donna J. Johanson withdrew money from her bank account, Plaintiffs allege no facts to support their claims that the money was paid to Judge Flores and Judge Duncan. (*See id.*). Plaintiffs simply argue that "[u]pon information and belief" that the alleged bribery occurred. (*Id.*). Such allegations are conclusory and do not satisfy the Rule 8(a) requirements. *See Iqbal*, 556 U.S. at 678–79.

Judge Duncan of jurisdiction, their actions could, at worst, be described as acts in excess of existing jurisdiction because the state court litigation was filed in the Maricopa County Superior Court which is a court of general jurisdiction. *See Miller v. Davis*, 521 F.3d 1142, 1145–48 (9th Cir. 2008) (affirming district court's finding of judicial immunity for governor who performed judicial act—despite the fact that governor had no jurisdiction—because act was not done in the "clear absence of all jurisdiction," but in excess of existing jurisdiction); *see also* Ariz. Const., art. 6, § 14 (listing jurisdiction of Arizona superior courts). Even if erroneously undertaken in excess of existing jurisdiction, a judicial act is still immune from litigation so long as it is not done "in the clear absence of jurisdiction." *See Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988) (holding that an act erroneously undertaken in excess of a judge's jurisdiction is not the same as an act that is taken "in clear absence of all jurisdiction.").

Because Defendants Flores and Duncan are judicially immune from damages for their judicial actions, the Court will dismiss Plaintiffs' causes of action against these Defendants for conspiracy under 42 U.S.C. § 1983 and § 1985(2). Further, any claim for injunctive or declaratory relief for the allegedly erroneous rulings of Judge Flores or Judge Duncan would be futile as such claims would constitute forbidden de facto appeals. *See Noel*, 341 F.3d at 1156 ("[W]hen a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal.); *Henrichs v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007) (holding that the *Rooker-Feldman* doctrine bars a district court from determining that a state court's decision was wrong and thus void).

Plaintiffs have repeatedly failed to allege any valid conspiracy claims against Judge Flores or Judge Duncan, and Judge Flores and Judge Duncan have judicial immunity for their judicial actions. Thus, the Court finds that further leave to amend would be a futile exercise and dismisses these claims with prejudice. *See Gompper*, 298 F.3d at 898 (holding that leave to amend need not be granted if it would be "a futile exercise"); *Airs Aromatics*,

744 F.3d at 600 (holding that leave to amend should be denied if amendment would be futile).

### 2.      Causes of Action Against Defendants Brian Eastin, Provident Law PLLC, Donna Johanson, the Estate of Gary T. Johanson, Garpdon LLC, and the Johanson Family Revocable Trust

Plaintiffs further assert a cause of action against Defendants Brian Eastin, Provident Law PLLC, Donna Johanson, the Estate of Gary T. Johanson, Garpdon LLC, and the Johanson Family Revocable Trust for conspiracy under 42 U.S.C. § 1983 and § 1985(3). (*See id.* at 80–82). To prevail on a claim under 42 U.S.C. § 1983, Plaintiffs must allege a violation of a federal constitutional or statutory right by a state actor. *See Paul*, 424 U.S. at 700–01; *Ketchum*, 811 F.2d at 1245. Under 42 U.S.C. § 1985(3), Plaintiffs must show a conspiracy motivated by class-based animus to deprive them of equal protection of the laws. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

As stated *supra*, Defendants in these causes of action are not state actors. *See supra* Section III.a.2. Thus, any claims against them under 42 U.S.C. § 1983 fail and are dismissed. Further, as stated *supra*, Plaintiffs' claims of class-based animus are conclusory and do not satisfy the Rule 8(a) requirements. *See supra* Section III.a.1. Thus, any claims against the instant Defendants under 42 U.S.C. § 1985(3) fail and are dismissed.

As this is the Third Amended Complaint and Plaintiffs have repeatedly failed to allege any valid conspiracy claims against the instant Defendants, the Court finds that further leave to amend would be a futile exercise and dismisses these claims with prejudice. *See Gompper*, 298 F.3d at 898 (holding that leave to amend need not be granted if it would be "a futile exercise"); *Airs Aromatics*, 744 F.3d at 600 (holding that leave to amend should be denied if amendment would be futile).

### 3.      Cause of Acton Against Defendant Gregory E. Hinkel[4]

---

[4] Defendant Gregory E. Hinkel did not file a motion to dismiss but requested that the Third Amended Complaint be dismissed in his Answer. (*See* Doc. 94). Per Federal Rule of Civil Procedure 12(h), a party may, in their answer, raise the argument that a complaint should be dismissed for failure to state a claim. Fed. R. Civ. P. 12(h)(2)(a). Additionally, "[a] [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving

Plaintiffs additionally assert a cause of action against Defendant Gregory E. Hinkel for conspiracy under 42 U.S.C. § 1983. (*See id.* at 82–84). To prevail on a claim under 42 U.S.C. § 1983, Plaintiffs must allege a violation of a federal constitutional or statutory right by a state actor. *See Paul*, 424 U.S. at 700–01; *Ketchum*, 811 F.2d at 1245.

As with Defendants discussed *supra*, Defendant Gregory E. Hinkel is not a state actor. *See supra* Section III.a.2. Plaintiffs allege no facts that implicate any of the Ninth Circuit tests for finding state action, and Plaintiffs' claims of bribery and a conspiracy with state actors are conclusory and do not satisfy the Rule 8(a) requirements. *See id.*; (*see also* Doc. 82 at 24–25). Plaintiffs also claim the same violations of constitutional rights by Defendant Gregory E. Hinkel as the other Defendants in the Third Amended Complaint. (*See* Doc. 82 at 82–84). As discussed *supra*, these allegations do not state a viable claim under 42 U.S.C. § 1983. *See supra* Section III.a.1. Thus, any claims against Defendant Gregory E. Hinkel under 42 U.S.C. § 1983 necessarily fail.

Further, Plaintiffs' claims of conspiracy between Defendants Gregory E. Hinkel and Brian Eastin are conclusory or simply fail to allege a conspiracy. Plaintiffs claim that "Greg Hinkle [sic] violated attorney-client privilege in a settlement conference by making false statements to the arbitrator." (Doc. 82 at 24). Plaintiffs do not describe what these statements were, how they were privileged, or why making false statements would violate attorney-client privilege. (*See id.*). Next, Plaintiffs assert that "Defendant Greg Hinkle [sic] contacted defendant Brian Eastin and divulged pertinent and confidential case information. Plaintiffs know of two other occasions where defendant Greg Hinkle [sic] and defendant Brian Eastin met in person." (*Id.*). Plaintiffs do not describe what information was divulged, how they learned the information was divulged, or how the mere fact that two people communicated and met in person supports a conclusory allegation of conspiracy. (*See id.*). Finally, Plaintiffs allege that Gregory E. Hinkel obtained privileged information from Plaintiffs while representing them in a state court action and communicated this information to Brian Eastin. (*See id.* at 83). Plaintiffs do not detail what this information

defendants." *Abignnin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008).

was, nor do they offer any facts to substantiate this conclusory statement. (*See id.*). Thus, any claims of conspiracy against Defendant Gregory E. Hinkel fail to meet the Rule 8(a) requirements.

As this is the Third Amended Complaint and Plaintiffs have repeatedly failed to allege any valid conspiracy claims, the Court finds that further leave to amend would be a futile exercise and dismisses these claims with prejudice. *See Gompper*, 298 F.3d at 898 (holding that leave to amend need not be granted if it would be "a futile exercise"); *Airs Aromatics*, 744 F.3d at 600 (holding that leave to amend should be denied if amendment would be futile).

### d.    Twenty-Ninth Cause of Action: Breach of Privacy

Plaintiffs assert a cause of action against Defendants Brian Eastin and BBVA Bank for breach of privacy under 5 U.S.C. § 552a and 42 U.S.C. § 1983. (Doc. 82 at 86–88). To have a private right of action under 5 U.S.C. § 552a, Plaintiffs must show that Defendants are "agencies of the United States Government." *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985). As stated *supra*, Defendant Brian Eastin is a private individual, not a state actor, and Plaintiffs allege no facts that would make Brian Eastin an agency of the United States Government. *See supra* Section III.a.2; (Doc. 82 at 86–88). Thus, because 5 U.S.C. § 552a provides no private right of action against "private individuals," *Unt*, 765 F.2d at 1447, Plaintiffs' 5 U.S.C. § 552a claims against Brian Eastin will be dismissed.

Further, BBVA is a private entity as an Alabama banking corporation. (*See* Doc. 90 at 6). Plaintiffs use the same arguments discussed *supra* to argue that BBVA is a state actor, but these arguments fail for the same reasons. *See supra* Section III.a.2; (*see also* Doc. 82 at 30). Plaintiffs also argue that the fact that BBVA is regulated by the Federal Deposit Insurance Corporation creates a sufficiently close nexus with the government to make BBVA an agency of the United States Government. (*See* Doc. 82 at 30). However, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)). Thus, because 5 U.S.C.

§ 552a provides no private right of action against "private entities," *Unt*, 765 F.2d at 1447, Plaintiffs' 5 U.S.C. § 552a claims against BBVA will be dismissed.

To prevail on a claim under 42 U.S.C. § 1983, Plaintiffs must allege a violation of a federal constitutional or statutory right by a state actor. *See Paul*, 424 U.S. at 700–01; *Ketchum*, 811 F.2d at 1245. Plaintiffs, again, fall short on both requirements.

As discussed above, both Brian Eastin and BBVA Bank are private actors, not state actors. Additionally, the constitutional violations alleged by Plaintiffs are the same violations the Court discussed, and rejected, *supra*. *See supra* Section III.a.1. Finally, Plaintiffs argue a "breech [sic] of privacy" cause of action, but as discussed supra, "[i]n general, an American depositor has no reasonable expectation of privacy in copies of his or her bank records, such as checks, deposit slips, and financial statements maintained by the bank." *In re Grand Jury Proceedings*, 40 F.3d at 962. As Plaintiffs' only claim supporting breach of privacy is that their financial records were obtained via allegedly fraudulent subpoenas, Plaintiffs fail to state a valid privacy violation. Because they did not validly allege a violation of a federal constitutional or statutory right, conduct by a state actor, or a breach of privacy, Plaintiffs do not adequately plead their cause of action against Defendants for breach of privacy under 42 U.S.C. § 1983.

As this is the Third Amended Complaint and Plaintiffs have repeatedly failed to allege any valid breach of privacy claims, the Court finds that further leave to amend would be a futile exercise and dismisses these claims with prejudice. *See Gompper*, 298 F.3d at 898 (holding that leave to amend need not be granted if it would be "a futile exercise"); *Airs Aromatics*, 744 F.3d at 600 (holding that leave to amend should be denied if amendment would be futile).

###### e.   Thirtieth Cause of Action: Civil RICO

Plaintiffs assert a cause of action against Defendants Brian Eastin and Provident Law PLLC for Civil Racketeering under A.R.S. § 13-2314.04 and 18 U.S.C. § 1961–1968. (Doc. 82 at 88–97). A.R.S. § 13-2314.04 provides:

A person who sustains reasonably foreseeable injury to his person, business

1
2
3

> or property by a pattern of racketeering activity, or by a violation of § 13-2312 involving a pattern of racketeering activity, may file an action in superior court for the recovery of up to treble damages and the costs of the suit, including reasonable attorney fees for trial and appellate representation.

4
5
6
7
8
9
10
11
12

Ariz. Rev. Stat. Ann. § 13-2314.04(A). To establish a claim of civil racketeering, a plaintiff must show a pattern of racketeering, which requires establishing at least two predicate acts of racketeering that are "related" and "continuous." *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 7 P.3d 158, 161 ¶ 12 (Ariz. Ct. App. 2000); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 n.14 (1985) ("It is this factor of continuity plus relationship which combines to produce a pattern."); *see also* Ariz. Rev. Stat. Ann. § 12-2314.04(T)(3) (defining "pattern of racketeering activity"). The plaintiff must also show an injury that was proximately caused by the pattern of racketeering. *Rosier v. First Fin. Capital Corp.*, 889 P.2d 11, 15 (Ariz. Ct. App. 1994).

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

While Plaintiffs cite the entirety 18 U.S.C. § 1961–1968 when alleging civil racketeering under federal law, it appears they are relying upon § 1962(c) which prohibits racketeering by "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce . . . ." 18 U.S.C. § 1962(c). To state a claim under § 1962(c), a plaintiff must validly allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). A pattern "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). While two predicate acts are the minimum requirement for a pattern, merely claiming two predicate acts may not be sufficient as "there is something to a RICO pattern beyond simply the number of predicate acts involved." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). "The term 'pattern' itself requires the showing of a relationship between the predicates and of the threat of continuing activity. It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* at 239 (internal punctuation, alterations, and quotations omitted). A plaintiff must also show an injury that was proximately caused by the pattern of racketeering. *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 274 (1992)).

For both their state and federal claims, Plaintiffs do not adequately plead the continuity required for a pattern of racketeering activity or an injury proximately caused by racketeering activity.

### 1.   Continuity

The federal standard for continuity is used under both A.R.S. § 13-2314.04 and 18 U.S.C. § 1962(c). *See Lifeflite Med.*, 7 P.3d at 161 ¶ 12 (Ariz. Ct. App. 2000). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). "'Closed-ended' continuity is established by showing that related predicate acts occurred over a 'substantial period of time.'" *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995) (quoting *H.J. Inc.*, 492 U.S. at 242). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc.*, 492 U.S. at 242. "Open-ended continuity is the threat that criminal conduct will continue into the future. It is established by showing either that the predicate acts 'include a specific threat of repetition extending indefinitely into the future' or that the predicate acts were 'part of an ongoing entity's regular way of doing business.'" *Allwaste*, 65 F.3d at 1527.

Plaintiffs claim that Bryan Eastin and Provident Law PLLC regularly use forgery and fraud to engage in prolonged, vexatious litigation so they may collect excessive legal fees. (*See* Doc. 82 at 88–90). To show continuity, rather than isolated acts of forgery and fraud within their case, Plaintiffs assert that Defendants have perpetrated this scheme in other litigations by forging repair invoices, altering rental leases, and forging an "irrevocable assignment of interest." (*See id.*). Such claims of forgery and fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Wescott v. SC Anderson, Inc.*, No. 17-CV-05676-LB, 2018 WL 5849012, at *3 (N.D. Cal. Nov. 6, 2018); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071, 1082 (S.D. Cal. 2006); *Ness v. W. Sec. Life Ins.*, 851 P.2d 122, 128 (Ariz. Ct. App. 1992) ("[A] 'scheme

or artifice' is some 'plan, device, or trick' to perpetrate a fraud." (citation omitted)). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud," which means "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted).

Plaintiffs' claims of previous fraud and forgery by Defendants fail to meet the pleading standards of Rule 8(a) or 9(b). They argue that documents were forged and altered without giving any other facts or details to substantiate such claims. Such "naked assertions devoid of further factual enhancement" do not satisfy the Rule 8(a) requirements, let alone the heightened Rule 9(b) requirements. *See Iqbal*, 556 U.S. at 678 (internal alterations and punctuation omitted). Thus, the Court will not consider Plaintiffs' conclusory statements regarding Defendants' alleged past fraud and forgery.

Similarly, Plaintiffs' claims that Defendants' alleged fraud and forgery are part of their business model or will continue in the future are conclusory. Plaintiffs aver that Defendants' business model is to prolong litigation through forgery and fraud and that "[t]his is a continuing threat" because "Defendants are more embolden [sic] with each act and are brazen with impunity." (Doc. 82 at 89–90). Again, Plaintiffs provide no facts or details to substantiate these bombastic claims. Such conclusions regarding future wrongs fail to meet the pleading standards of Rule 8(a) or 9(b), so the Court will not consider them.

Plaintiffs further assert that the billing rates, judgment amounts, and number of cases brought by Defendants are proof of their continuing illicit activity. (*See* Doc. 82 at 88–89). These actions simply reflect a functioning legal practice, however, and the practice of law is not racketeering. *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1053 (D. Ariz. 2012), *aff'd sub nom. Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013).

Even if Plaintiffs properly assert claims of forgery and fraud in their state court litigation with Defendants, such isolated acts in a single litigation do not show the continuity required for a civil racketeering claim. *See Allwaste*, 65 F.3d at 1527. Because they fail to show continuity, Plaintiffs' claims of civil racketeering lack the necessary showing of a pattern of activity.

1

        **2.**     **Injury**

2

      Under both A.R.S. § 13-2314.04 and 18 U.S.C. § 1962(c), a plaintiff must show an

3

injury that was proximately caused by the pattern of racketeering. *See Rosier*, 889 P.2d at

4

15; *Canyon Cty.*, 519 F.3d at 972. To prove proximate causation necessary for a civil

5

racketeering claim, a party must prove "some direct relation between the injury asserted

6

and the injurious conduct alleged." *Holmes*, 503 U.S. at 268.

7

      Plaintiffs assert a myriad of injuries stemming from Defendants' alleged fraud and

8

forgery, but all of these damages are connected generally to Plaintiffs' litigation costs in

9

their state court action against Defendants. (*See* Doc. 82 at 93, 96–97). The state court

10

litigation itself, however, is not racketeering activity.[5] Instead, it is the fraud and forgery

11

alleged by Plaintiffs that would constitute racketeering activity. The acts alleged by

12

Plaintiffs that constitute the civil racketeering claim all center around subpoenas served on

13

banks to obtain Plaintiffs' financial records. (*See id.* at 91–92, 94–96). Thus, Plaintiffs'

14

claims must assert damages proximately caused by the alleged fraud and forgery itself, not

15

the state court litigation in general.

16

      Plaintiffs' claims do not validly assert damages stemming from Defendants' alleged

17

fraud and forgery. The state court found that Defendants were entitled to discover

18

Plaintiffs' bank records. (*See* Doc. 87-1 at 8). Thus, even if Defendants obtained these

19

records via forgery, Plaintiffs have no damages as Defendants had the right to obtain the

20

records. Likewise, any damages resulting from Defendants obtaining Plaintiffs' financial

21

records, (*See* Doc. 82 at 21 (claiming that Defendants distributed Plaintiffs' financial

22

information at will which led to it "appearing on the dark web")), do not stem from the

23

alleged fraud and forgery because Defendants had the right to obtain Plaintiffs' records.

24

      Even if Plaintiffs properly assert claims of forgery and fraud in their state court

25

---

26

[5] To the extent that Plaintiffs would argue that the state court litigation itself is a part of the Defendants' alleged pattern of racketeering, the Court notes that "[i]t cannot possibly be

27

racketeering, or anything else actionable, to hire attorneys to present matters to the courts or for the judges to rule on the matters presented." *Donahoe*, 869 F. Supp. 2d at 1053; *see*

28

*also Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) (holding that the *Noerr-Pennington* doctrine applies to civil RICO claims and disallows the maintenance of a RICO action for asserting legal claims that do not amount to a sham).

litigation with Defendants, Plaintiffs do not adequately claim any injuries directly related to the alleged acts of forgery and fraud. Plaintiffs' claims of damages stemming generally from the state court litigation do not suffice. Thus, Plaintiffs' claims of civil racketeering fail to adequately plead injury.

### 3.    Conclusions Regarding Civil Racketeering

Plaintiffs' cause of action asserting civil racketeering does not satisfy the necessary pleading requirements. At a minimum, Plaintiffs' claims fail to show the necessary continuity or injury required to assert a claim for civil racketeering. Because Plaintiffs do not adequately plead civil racketeering under A.R.S. § 13-2314.04 or 18 U.S.C. § 1962(c), the Court will dismiss these claims.

As this is the Third Amended Complaint and Plaintiffs have repeatedly failed to allege any valid civil racketeering claims, the Court finds that further leave to amend would be a futile exercise and dismisses these claims with prejudice. *See Gompper*, 298 F.3d at 898 (holding that leave to amend need not be granted if it would be "a futile exercise"); *Airs Aromatics*, 744 F.3d at 600 (holding that leave to amend should be denied if amendment would be futile).

### f.    Global Issues with the Complaint

Plaintiffs' Third Amended Complaint is what has become known as a "shotgun pleading." The key characteristic of a shotgun pleading is that it "fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," which renders them disfavored and usually subject to dismissal. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). A complaint is a shotgun pleading where it has at least one of the following characteristics: (1) it "contain[s] multiple counts where each count adopts the allegations of all preceding counts," (2) it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," (3) it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions[] or which of the defendants the claim is brought

against." *See id.* at 1321–23. Plaintiffs' Third Amended Complaint suffers from at least the first two defects.[6]

While Plaintiffs' Third Amended Complaint is more comprehensible than their Amended Complaint (Doc. 14), it is still a vague, hard to follow, devoid of the necessary factual assertions, and replete with conclusory statements. These are the same issues that, in part, led the Court to dismiss Plaintiffs' Amended Complaint. (*See* Doc. 75 at 15–17). Because this is the Third Amended Complaint and Plaintiffs have repeatedly failed to correct their pleading errors or offer the underlying facts necessary to support their myriad claims, the Court finds that further leave to amend would be a futile exercise and dismisses Plaintiffs' Third Amended with prejudice. *See Gompper*, 298 F.3d at 898 (holding that leave to amend need not be granted if it would be "a futile exercise"); *Airs Aromatics*, 744 F.3d at 600 (holding that leave to amend should be denied if amendment would be futile).

### g.      Motion to Seal

Defendants request that the Court seal Doc. 105, a reply regarding the pending Motion to Enjoin (Doc. 84), arguing that it contains attorney-client privileged information. (*See* Doc. 111 at 4). The Court has read the submissions of the parties and finds the parties materially dispute the facts of how Plaintiffs came to be in possession of the document at issue. On this record, the Court cannot determine whether there was waiver of the attorney-client privilege as argued by Plaintiffs. (*See* Doc. 114 at 4). However, as indicated above, Plaintiffs' Third Amended Complaint will be dismissed in its entirety, so the Court did not need to rely on the document in question to resolve the pending Motion to Enjoin (Doc. 84). Accordingly, out of an abundance of caution, the Court will seal the document in its entirety.

### IV.      CONCLUSION

Accordingly,

---

[6] The Court notes that, while the beginning of each cause of action in the Third Amended Complaint clearly states the Defendants against whom the claim is asserted, claims reference Defendants not listed at the beginning of the cause of action. (*See, e.g.*, Doc. 82 at 79 (Twenty-Fifth Cause of Action notes that it is against Defendant Lisa Flores but speaks about a conspiracy led by Defendant Brian Eastin)).

1    **IT IS ORDERED** that Defendants' Motions to Dismiss (Docs. 87, 90, 101) are

2    **GRANTED.**

3    **IT IS FURTHER ORDERED** that Defendant Gregory E. Hinkel's request that the

4    Third Amended Complaint be dismissed in his Answer (Doc. 94) is **GRANTED**.

5    **IT IS FURTHER ORDERED** that the Motion to Enjoin (Doc. 84), the Motion to

6    Strike (Doc. 112), and the Motion for Entry of Judgment under Rule 54(b) (Doc. 103) are

7    denied as moot.

8    **IT IS FURTHER ORDERED** that the Motion to Seal (Doc. 111) is **GRANTED**,

9    and the Clerk of the Court shall seal Doc. 105 in its entirety.

10    **IT IS FURTHER ORDERED** that this case is dismissed in its entirety **WITH**

11    **PREJUDICE,** and the Clerk of the Court shall enter judgment accordingly.

12    **IT IS FINALLY ORDERED** that Defendants' requests for fees and costs found

13    within their motions to dismiss are denied without prejudice to Defendants (collectively or

14    individually) filing a timely motion(s) for fees and/or bill(s) of costs consistent with the

15    local rules.

16    Dated this 23rd day of December, 2020.

17

18

19

20    James A. Teilborg
      Senior United States District Judge

21

22

23

24

25

26

27

28